James S. COLLINS, Appellant,

v.

Jim AMMERMAN, Appellee.

No. 8012.

Court of Civil Appeals of Texas, Texarkana.

Oct. 6, 1970.

Franklin Jones, Marshall, Earl Sharp, Longview, for appellant.

William Huffman, Smith, Hall & Huffman, Marshall, for appellee.

PER CURIAM.

This is an appeal from the judgment of the 71st Judicial District Court, Harrison County, at Marshall, Texas, in a contest of a primary election nomination authorized by Election Code Art. 13.30 (1967), V.A.T.S. A Democratic Party Primary Election was held in Harrison County on May 2, 1970. The parties to this appeal were the only candidates in the primary for selection as the Democratic Party nominee for the office of County Judge of Harrison County in the 1970 General Election. The canvass made of the Primary Election returns showed James S. Collins received 4,057 votes and Jim Ammerman received 4,073 votes.

This excerpt from the Judgment filed in the District Court shows the disposition made of the contest by the trial court, to-wit:

"It is therefore ORDERED, ADJUDGED AND DECREED as follows:

1. The Primary Election held by the Harrison County Democratic Party on May 2, 1970, insofar as the nominee for County Judge of Harrison County is involved, is held to be invalid and of no effect.

2. The Executive Committee of the Harrison County Democratic Party is directed to proceed forthwith to take all appropriate steps to call a new election in order that the electors of Harrison County, who are members of the Democratic Party, may select the nominee of that party whose name will appear on the ballot at the general election to be held on November 3, 1970.

3. The Clerk is directed to deliver a certified copy of this Judgment to Doyle W. Curry, Chairman of the Executive Committee of the Harrison County Democratic Party."

In this court James S. Collins asserts the quoted judgment should be reversed and judgment rendered declaring him the party nominee. Jim Ammerman has also appealed and asserts the judgment should be reversed and rendered in his favor, or alternately, the case remanded for retrial.

■ The trial court's jurisdiction to hear and decide contests of primary nominations is conferred upon it by statute, and such proceedings depend upon and must strictly conform to statutory authority and regulation. The statutory design for the trial and settlement of such contest is embraced in the twelve sections of Art. 13.30 initially cited. A summary of the entire article is not feasible nor called for at this point, but reference to and quotations of several of the article's sections is made to focus attention upon Election Code provisions that control the questions to be discussed. Besides authority to relax rules of procedure, pleading and evidence, Sec. (7), and to appoint commissioners for certain purposes, compel production of records, etc., Sec. (8), the scope of the judicial power and responsibility of a trial court in such contest is set out in Sections (9), (10), and (11), to-wit:

"(9) Upon the trial of said cause, the court shall have full power and authority to hear and determine all matters and things necessary or proper to the determination of such election contest, including the manner of holding the election, any frauds or irregularities in the conduct thereof, or in the making of the returns thereof, illegal votes cast at said election or legal votes prevented from being cast, false calculations, certificates or returns, and to exercise all powers of the court, in order to fully inquire into and ascertain the true and correct result of such election, free from any fraud, irregularity or mistake.

"(10) In addition to the powers and authority heretofore granted to the dis-

trict courts, where fraud or illegality is charged, if such charges of fraud or illegality be supported by some evidence, or by affidavit of reputable persons, and the ends of justice seem to require it, the court shall have authority to unseal and reopen the ballot boxes to determine controverted issues, and the court may recount, or under its direction cause to be recounted, the ballots cast in any or all precincts of the county to determine the true result of such election. In all such cases in which a reopening of ballot boxes is ordered, the court shall exercise all due diligence to preserve the secrecy of the ballots, and upon completion of such recount, the said ballot boxes with their original contents shall be resealed and redelivered to the county clerk.

"(11) When the District Court shall have decided the contest, unless notice of appeal to the Court of Civil Appeals be given and an appeal bond filed within five (5) days, the said Court shall certify its findings to the officers charged with the duty of providing the official ballot for the ensuing election for observance in the preparation of the ballot for that particular party. The trial Court shall further fix a time within which the record in the trial Court shall be filed in the appellate Court, and make all such other orders in the cause as in his discretion may be necessary and expedient in order to expedite such appeal."

When the authority of the trial court to decide the contest is considered in connection with its duty to exercise all of the powers of a district court to ascertain the true and correct result of the election * free from fraud, irregularity and mistake, it is arguable that by implication the trial court is empowered to nullify the results of the balloting in a primary election when such course is necessary to a final determination of an issue before it. No implication is to be found in the quoted sections, the remainder of Article 13.30, or elsewhere in

the Election Code, authorizing a judgment of the trial court that falls short of deciding a contest. Election Code Art. 9.15 (1967) empowers a court to void an election under certain circumstances, but the Article governs general and special elections and has no application to a party primary. At most, the arguable implication of Article 13.30 is no more than that the trial court may, after hearing, find that the contest can not be determined without re-submission of the candidates to the balloting of party voters and order balloting for that purpose under the court's supervision, so that the contest may be finally decided by the court.

■ It is not material here, however, whether the trial court may order and supervise balloting or not, as the judgment (see excerpt heretofore quoted) does not purport to order balloting under court supervision, and does not decide the contest, and therefore is not a judgment the law authorizes to be entered in contest actions. The judgment rendered merely orders the Democratic Party to hold another Primary Election for the selection of a Democratic nominee, but does not decide the contest before it. All parties to this appeal contend, alternatively or otherwise, that the judgment of the court should be reversed. Their points of error in which the question is presented are sustained to that extent. The judgment is ordered reversed. It must now be determined from the record whether the jdgment will be rendered or the case remanded for retrial.

By appropriate pleadings, Jim Ammerman petitioned the trial court to declare void certain votes cast by electors in a precinct other than that of their residence. The trial court voided the ballots of certain voters in this category, but declined to open the ballot boxes and make a recount on the basis of his order. The trial judge's opinion, made a part of the judgment, confirms this procedure, and the record shows that Ammerman was prevented from offering

---

* An election is not a single event but a process, and deference to its true nature is undertaken in the discussion that follows.

into evidence the result of a recount in which such void ballots would be disregarded. The number of ballots involved was sufficient to be decisive in determining the election contest. Ammerman's rights in this respect were curtailed without fault on his part.

This court may render judgment only when every fact necessary to the determination of the rights of the parties has been presented and the case fully developed in the trial court. It is obvious in this instance that the factual record is incomplete through no fault of Ammerman. Accordingly, this court may only reverse the judgment and remand the contest to the district court for full factual development. It is so ordered.

But for this being a Primary Election contest case, little more would need to be said. However, since General Election deadlines must be met, judgment here and in the trial court must be reconciled with laws pertaining to such elections. The dates for holding party primaries are fixed by statutory law, as is the date of the General Election. In this instance the time in which a contest might be heard and decided is confined to the period between May 2, 1970, and the beginning of absentee voting at the November 3, 1970, General Election. This case well illustrates the maze of dates and deadlines a primary contestant encounters and makes understandable the pressure and difficulties under which the parties and the court must operate. The contest was instituted May 14, 1970. Trial commenced May 26, and Judgment was signed and entered July 27. Exercising authority vested solely in him, the trial judge fixed the time for filing the appeal record in this court as September 21st; this was undoubtedly because of the voluminous evidence introduced in the trial. A statement of fact containing over four thousand typewritten pages, together with a transcript of over two hundred pages were duly filed. This court allowed the parties two weeks for preparation of written briefs, necessitating that oral argu-

ment and submission of the case be set not earlier than October 6th. The date prescribed by law for holding the next General Election is November 3, 1970. The statutes require absentee balloting to begin twenty days prior to the General Election. To comply, the ballots must be printed and delivered to appropriate election officials for absentee voting not later than October 13, 1970. Finally, this court's decision and judgment is hereby rendered and entered this day, October 6, 1970.

On the basis of the immense record in this case and the time consumed in the previous trial, it is only remotely probable that the case may be retried and the contest decided within the four or five days period available to the trial court before the General Election ballots must be printed and delivered to absentee election officials. However, by relaxing the rules of procedure, pleading and evidence and securing such agreements and stipulations as the parties will make it is possible in theory that a retrial may be completed. In view of this bare possibility, and the demands of Article 13.30, Sec. (12), which forbids Courts of Civil Appeals to dismiss an appeal as moot because of the possibility of the interference with the printing of official ballots, it is ordered that this case be reversed and remanded to the trial court for retrial. If, in the period of time available, the trial court becomes satisfied that a just trial and decision can not be had without interference with the printing of the official ballots, the trial court will have no choice but to dismiss the action as moot. In an emergency such as this, when only a relatively small number of ballots for use in absentee balloting is required, this court is of the opinion that if energetic and good faith effort is made a printer may be found who can supply such ballots upon relatively short notice; perhaps in a matter of hours.

No rehearing will be entertained, the mandate of this court shall issue instanter, and all statutes, law and rules that would or might deny or delay immediate effect to

the judgment of this court are relaxed and suspended so far as this court has authority to do so. It being the intention of this court's judgment that it shall have immediate effect, and that no statute, law or rule it is authorized to relax, suspend or disregard will nullify immediate effectiveness. The Clerk of this court shall without delay and at the earliest practical time make all reasonable effort to supply the trial court with a copy of this opinion, this court's judgment and mandate, together with other evidence of the action of this court that is customarily furnished the trial court when a case is reversed and remanded.

DAVIS, J., concurs in the results reached in the foregoing opinion.